IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 05-809 |
| v. | : | |
| | : | |
| SOUTHERN DELAWARE CENTER FOR CHILDREN AND FAMILIES, INC. FRANCIS A. OGUNDARE, CAROLYN WILLIAMS, REVEREND LEON WILLIAMS, WILLIAM B. DUFFY, WALLACE F. HANDY, KATHERINE H. LEWIS, DEBORAH WASHINGTON and ROSAMAE I. SMITH, | : : : : : : : : | |
| | : | |
| Defendants. | : | |

**THE DEPARTMENT OF HEALTH AND HUMAN SERVICES' OPENING BRIEF IN SUPPORT OF ITS MOTION FOR A TEMPORARY RESTRAINING ORDER, OR, IN THE ALTERNATIVE, A PRELIMINARY INJUNCTION**

COLM F. CONNOLLY
United States Attorney

By:  Seth M. Beausang (I.D. No. 4071)
Assistant United States Attorney
Attorney for the United States
The Nemours Building
1007 Orange Street, Suite 700
P.O. Box 2046
Wilmington, DE 19899-2046
(302) 573-6277
seth.beausang@usdoj.gov

DATED: November 23, 2005

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

NATURE AND STAGE OF THE PROCEEDING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

STATEMENT OF FACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

   I.     A TEMPORARY RESTRAINING ORDER OR PRELIMINARY
        INJUNCTION SHOULD ISSUE IN FAVOR OF DHHS . . . . . . . . . . . . . . . . . . 11

       A.    Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

       B.    There Is A Reasonable Probability That DHHS Will Succeed On The
           Merits Of Its Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

       C.    DHHS And The Head Start Beneficiaries Will Be Irreparably Harmed
           Absent Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

       D.    Southern Delaware Will Not Be Irreparably Harmed If Enjoined . . . . . . 18

       E.    The Public Interest Favors Issuing The Requested Injunction . . . . . . . . . 19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

**CASE**                                                                                          **PAGE**

*Atl. Props. Group, Inc. v. Deibler*
    93M-11-001, 1994 WL 45433 (Del. Super. Ct. Jan. 6, 1994) ...................... 12

*Buchman v. Alexander*
    46 U.S. 20 (1846) ......................................................... 13

*Doe v. Miller*
    573 F. Supp 461 (N.D. Ill 1983) ............................................ 19

*Elliott v. Kiesewetter*
    98 F.3d 47 (3d Cir. 1996) .................................................. 11

*GoTo.com, Inc. v. Walt Disney Co.*
    202 F.3d 1199 (9th Cir. 2000) ............................................. 11

*Harlan & Hollingsworth Corp. v. McBride*
    69 A.2d 9 (Del. 1949) ..................................................... 12

*In re Joliet-Will County Comty. Action Agency*
    847 F.2d 430 (7th Cir. 1988) .............................................. 13

*In re Sw. Citizens' Org. for Poverty Elimination*
    91 B.R. 278 (Bankr. D.N.J. 1988) ......................................... 14

*Merchants & Evans, Inc. v. Roosevelt Bldg. Products, Co.*
    963 F.2d 628 (3d Cir. 1992) ............................................... 12

*Morel v. Giuliani*
    927 F. Supp. 622 (S.D.N.Y. 1995) ......................................... 17

*Neukirchen v. Wood County Head Start, Inc.*
    53 F.3d 809 (7th Cir. 1995) ............................................... 13

*Old Discount Corp. v. Tupman*
    805 F. Supp. 1130 (D. Del. 1992) .......................................... 11

**CASE**                                                                                          **PAGE**

*Opticians Ass'n of Am. v. Indep. Opticians of Am.*
    920 F.2d 187 (3d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Bell*
    414 F.3d 474 (3d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States Dep't of Hous. & Urban Dev. v. K. Capolino Constr. Corp.*
    No. 01 Civ. 390 (JGK), 2001 WL 487436 (S.D.N.Y. May 7, 2001) . . . . . . . . . . . . . . . 13

*Westmoreland Human Opportunities, Inc. v. Walsh*
    246 F.3d 233 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**STATUTES AND OTHER AUTHORITIES**

    5 U.S.C. § 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 18
    28 U.S.C. § 2202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17
    42 U.S.C. § 9831 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    45 C.F.R. § 74.32(c)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    45 C.F.R. § 74.34(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    45 C.F.R. § 74.34(h)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
    45 C.F.R. § 74.35(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    45 C.F.R. § 74.53(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 16
    45 C.F.R. § 74.53(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    45 C.F.R. § 1301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    45 C.F.R. § 1303.13(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    45 C.F.R. § 1303.13(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7
    45 C.F.R. § 1303.13(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    45 C.F.R. § 1303.13(f)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    45 C.F.R. § 1303.13(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## NATURE AND STAGE OF THE PROCEEDINGS

The Southern Delaware Center for Children and Families ("Southern Delaware") is a Delaware corporation, non-profit organization and the recipient of a federal grant (the "Grant") awarded pursuant to the Head Start Act, 42 U.S.C. § 9831, et seq., and the regulations promulgated thereunder, 45 C.F.R. Parts 1301-1311 (2005). The Administration for Children and Families ("ACF"), a division of the Department of Health and Human Services ("DHHS"), is the entity charged with administering the Head Start program. Southern Delaware was awarded the Grant to provide educational, nutritional, health, social and other services to approximately 196 children and families residing in the western part of Sussex County, Delaware.

On October 28, 2005, David Lett, the Regional Administrator for ACF who oversees Southern Delaware's Grant, notified Southern Delaware Board of Directors President Francis A. Ogundare by letter (the "Suspension Letter") that Southern Delaware's Grant was summarily suspended for an indefinite period because (1) Southern Delaware failed to abide by the terms and conditions of its Grant and other applicable regulations; and (2) Southern Delaware failed to comply with the required fiscal reporting requirements applicable to grantees in the Head Start program. (Exhibit A at 1.) The Suspension Letter stated that pursuant to 45 C.F.R. § 1303.13(e) ACF had appointed Community Development Institute ("CDI") as the interim grantee to operate Southern Delaware's Head Start operations until Southern Delaware's suspension was lifted or a new grantee was selected, and requested Southern Delaware's cooperation to make a smooth transition to CDI and help prevent a disruption of Head Start services. (Id. at 5-6.) The Suspension Letter further stated that Southern Delaware had the right to appeal the suspension in writing to the Departmental Appeals Board (the "DAB") within five days. (Id. at 5.) Southern Delaware served the DAB with its written appeal on November 2, 2005. (Exhibit B.) Also on

November 2, 2005, Southern Delaware ceased providing Head Start services.

On November 3, 2005, Lett notified Ogundare by letter (the "Termination Letter") that ACF intended to terminate Southern Delaware's Grant. (Exhibit C.) The Termination Letter cited five statutory and regulatory provisions as the legal authority for ACF's decision to terminate Southern Delaware's Grant, and explained in detail the facts supporting each ground for termination. (Id. at 4-14.) The Termination Letter stated that Southern Delaware had the right to appeal the termination in writing within thirty days and the right to request a hearing. (Id. at 14.) A hearing on Southern Delaware's appeal is scheduled before the DAB on November 30, 2005. (Exhibit B.)

Despite repeated requests by DHHS, Southern Delaware has refused to (1) turn over vehicle titles and keys[1], equipment, supplies and leases purchased with Head Start funds to CDI; (2) permit CDI access to two of Southern Delaware's Head Start facilities, the Laverty Lane Child Care Center at 2 Laverty Lane, Bridgeville, Delaware 19933 ("Laverty Lane") and the Southern Delaware Administrative Office at 18907 Unit 4 Maranatha Way, Bridgeville, Delaware 19933 ("Administrative Office"), each of which were leased through the end of 2005 with Head Start funds; (3) provide a final inventory that lists all equipment acquired with DHHS funds or that is otherwise federally owned; and (4) permit CDI access to books, documents, papers, or other records of Southern Delaware that are pertinent to Southern Delaware's Grant, in order to make audits, examinations, excerpts, transcripts and copies of such documents, or to provide timely and reasonable access to Southern Delaware's personnel for the purpose of

---

[1]On November 22, 2005, Ogundare gave CDI representatives keys to two of the Head Start buses, but indicated Southern Delaware would not turn over any other keys at this time.

interview and discussion related to such documents.

On November 15, 2005, the Southern Delaware Board of Directors met and agreed that

Southern Delaware representatives would meet with CDI representatives on November 17, 2005

to discuss turning over the keys and titles to Head Start vehicles, and the Head Start facilities,

leases, equipment and supplies, to CDI.  (Exhibit D, Declaration of Robert Sullivan at 3.)  On

November 17, 2005, Southern Delaware's Director of Services Charita Okorafor notified CDI

representatives by telephone that the meeting was cancelled because Southern Delaware was

unable to locate the keys and titles to the Head Start vehicles.  (Id.)  At a meeting with CDI

representatives on November 21, 2005, Southern Delaware President Ogundare agreed to sign a

release authorizing CDI to use the Head Start vehicles.  (Id.)  However, Southern Delaware

continues to refuse to turn over to DHHS or CDI the keys and titles to the vehicles that were

purchased with Head Start funds.  (Id.)  In addition, Southern Delaware continues to refuse to

turn over to CDI the Head Start facilities, leases, equipment and supplies, and will not allow CDI

or DHHS access to its books and records or personnel.  (Id.)

CDI intends to open the Milford Head Start Center located at 518 N. Church St., Milford,

Delaware 19963 and resume providing Head Start services to some of the 196 children and

families in the western part of Sussex County, Delaware, as soon as Delaware state authorities

grant it a license to do so.  (Id.)  At a meeting on November 22, 2005, Delaware state authorities

indicated to CDI that an appropriate license would issue as early as November 23, 2005, but

more likely on November 28, 2005.  (Id.)  CDI also plans to expand the number of children

receiving Head Start services once it has access to the other facilities, equipment, buses, supplies

and records.  (Id.)  Without access to the Southern Delaware Head Start vehicle keys and titles,

3

other facilities, equipment, leases, supplies and records, CDI will be substantially impaired in its efforts to resume providing Head Start services to all 196 children and families. (Id. at 3-4.)

On November 22, 2005, DHHS filed a Complaint in this Court seeking access to the Southern Delaware Head Start vehicle keys and titles, facilities, equipment, leases, supplies and records, and the return of any Head Start funds that were not spent in accordance with Southern Delaware's Grant. On November 23, 2005, DHHS filed a Motion For A Temporary Restraining Order, Or, In The Alternative, A Preliminary Injunction. This is DHHS' Opening Brief in support of its Motion.

4

## SUMMARY OF THE ARGUMENT

1.      All Head Start funds in the possession of Southern Delaware, and all property

purchased with those funds, are the property of the United States.  DHHS has shown a reasonable

probability that Southern Delaware is required under the Head Start regulations to (1) turn over

equipment, leases and vehicle titles and keys purchased with Head Start funds to CDI; (2) permit

CDI access to Southern Delaware's Laverty Lane and Administrative Office facilities; (3)

provide DHHS with a final inventory that lists all equipment acquired with DHHS funds or that

is otherwise federally owned; and (4) permit CDI and/or DHHS access to books, documents,

papers, or other records of Southern Delaware that are pertinent to Southern Delaware's Grant, in

order to make audits, examinations, excerpts, transcripts and copies of such documents, and to

provide timely and reasonable access to Southern Delaware's personnel for the purpose of

interview and discussion related to such documents.

2.      DHHS and the Head Start beneficiaries will be irreparably harmed if an injunction

is not entered because CDI will be substantially impaired in its efforts to resume providing Head

Start services to all of the 196 children and families.  Southern Delaware will not be irreparably

harmed by an injunction because it is appealing its termination to the DAB and can regain

possession of its facilities, vehicles, leases, equipment and supplies if that appeal is successful, or

if Southern Delaware successfully appeals its termination in federal court pursuant to the

Administrative Procedures Act, 5 U.S.C. § 702.  The public interest favors granting the

injunction so that CDI will not be substantially impaired in its efforts to restore Head Start

benefits to the Head Start children and families.  Every day these children are losing valuable

educational, nutritional, health, social and other services that can never be replaced.

5

## STATEMENT OF FACTS

Southern Delaware is a Delaware corporation and non-profit organization whose Board of

Directors consists of Ogundare, Carolyn Williams, Reverend Leon Williams, William B. Duffy,

Wallace F. Handy, Katherine H. Lewis, Deborah Washington and Rosamae I. Smith. Southern

Delaware was awarded approximately $1.3 million in Head Start funds to provide Head Start

services for 2005. (Exhibit E.) On September 22, 2005, during a telephone conversation with

ACF Regional Office Staff, Southern Delaware Director Carolyn Williams was asked if Southern

Delaware had enough funds to meet its Head Start obligations for the remainder of 2005.

(Exhibit D at 1-2.) In response, Williams reported that Southern Delaware might not be able to

meet its Head Start obligations beyond mid-October. (Id. at 2.)

On October 3, 2005, ACF Regional Office Staff contacted Southern Delaware by e-mail

regarding their budget deficit. (Id.) Southern Delaware responded that same day. Among other

things, Southern Delaware reported that without additional funding, Southern Delaware would

cease providing Head Start services on November 4, 2005. (Id.)

Because Southern Delaware would provide only vague and ever-changing accounts of its

financial situation, ACF conducted an on-site review on October 26 and 27, 2005, to determine

exactly what funds remained to support Southern Delaware's Head Start services for the balance

of the budget period – October 26, 2005 through December 31, 2005. (Id. at 2.) The review

revealed that Southern Delaware only had $63,674 available in its PMS account[2], and $5,560.37

available in its operating account, leaving Southern Delaware with a potential 2005 budget

---

[2]The PMS account is the account into which Head Start grant funds are deposited and then withdrawn to fund Head Start operations.

6

deficit of $249,394. (Id.; Exhibit A at 2.)

On October 28, 2005, Lett sent Ogundare the Suspension Letter informing Southern Delaware that its Grant was summarily suspended for an indefinite period because (1) Southern Delaware failed to abide by the terms and conditions of its Grant and other applicable regulations; and (2) Southern Delaware failed to comply with the required fiscal reporting requirements applicable to grantees in the Head Start program. (Exhibit A at 1.) The Suspension Letter stated that the suspension would take effect on November 3, 2005 at 5:00 p.m. (Id.) ACF was authorized to summarily suspend Southern Delaware's Grant for an indefinite period pursuant to 45 C.F.R. § 1303.13(b), and to appoint CDI as the interim grantee pursuant to 45 C.F.R. § 1303.13(e). Southern Delaware appealed its suspension in writing to the DAB on November 2, 2005. (Exhibit B.)

Also on October 28, 2005, Lett asked representatives of Southern Delaware to provide CDI and DHHS access to the facilities, vehicles, property, equipment and supplies that were purchased with Head Start funds, as well as the records of the children who attended the Southern Delaware's Head Start program. (Exhibit D at 2-3.) Lett, members of his staff, and representatives of CDI made similar requests on numerous subsequent occasions. (Id. at 2.) All of the requests were made with the intent of transferring Head Start property, equipment, and supplies to CDI so Head Start services would not be disrupted. (Id.) To date, Southern Delaware has given CDI access to the Milford Head Start Center and its contents. Southern Delaware has also signed an agreement with CDI to allow CDI to use the Head Start vehicles until titles are transferred to CDI, but has neither provided keys to vehicles nor agreed to transfer titles. (Id.) Southern Delaware has also not provided access to equipment, supplies, records, and the Laverty

7

Lane and Administrative Office facilities. (Id.) Upon information and belief, some of Southern

Delaware's Head Start equipment, supplies and records are also located at the Seaford Head Start

Center, 525 N. Front Street, Seaford, Delaware 19973.

On November 2, 2005, Southern Delaware ceased providing Head Start services. (Id. at

2.) On November 3, 2005, Lett sent Ogundare the Termination Letter notifying Southern

Delaware that ACF intended to terminate Southern Delaware's Grant. (Exhibit C.) The

Termination Letter cited five statutory and regulatory provisions as the legal authority for ACF's

decision to terminate Southern Delaware's Grant, and explained in detail the facts supporting

each ground for termination. (Id. at 4-14.) A hearing on Southern Delaware's appeal of its

suspension is scheduled before the DAB for November 30, 2005. (Exhibit B.)

Upon information and belief, Southern Delaware is in possession of approximately

twelve to fifteen vehicles that were purchased with Head Start funds. DHHS has specific

evidence that Southern Delaware possesses eight vehicles that were purchased with Head Start

funds. (See Exhibit F.) DHHS also has specific evidence that Southern Delaware used Head

Start funds to lease two buildings through the end of 2005, namely the Laverty Lane facility and

the Administrative Office. (See Excerpt from Southern Delaware's 2005 Budget Justification,

Exhibit G; Exhibit D at 2.) Upon information and belief, Southern Delaware possesses

equipment and supplies that were purchased with Head Start funds, including school desks and

computers. Pursuant to 45 C.F.R. § 74.53(b), Southern Delaware is obligated to retain "financial

records, supporting documents, statistical records, and all other records pertinent to an award" for

a period three years from the date of the submission of each annual application for Head Start

funds. Upon information and belief, Southern Delaware maintains those books and records.

8

Despite repeated requests by DHHS, Southern Delaware has refused to: (1) turn over vehicle titles and keys, equipment, supplies and leases purchased with Head Start funds to CDI; (2) permit CDI access to the Laverty Lane and Administrative Office facilities; (3) provide a final inventory that lists all equipment acquired with DHHS funds or that is otherwise federally owned; and (4) permit CDI access to books, documents, papers, or other records of Southern Delaware that are pertinent to Southern Delaware's Grant, in order to make audits, examinations, excerpts, transcripts and copies of such documents, or to provide timely and reasonable access to Southern Delaware's personnel for the purpose of interview and discussion related to such documents. (Exhibit D at 2-3.)

A meeting between Southern Delaware representatives and DHHS was scheduled for November 17, 2005, at which time DHHS believed Southern Delaware would turn over keys and titles to vehicles that Southern Delaware purchased with Head Start funds, and discuss the status of the Laverty Lane and Administrative Office facilities. (Id. at 3.) On November 17, 2005, Southern Delaware Director of Services Charita Okorafor notified CDI by telephone that the meeting was cancelled and that Southern Delaware was unable to locate the keys and titles to the Head Start vehicles. (Id.)

At a meeting with CDI representatives on November 21, 2005, Southern Delaware President Ogundare agreed to sign a release authorizing CDI to use the Head Start vehicles. (Id.) However, Southern Delaware continues to refuse to turn over to DHHS or CDI the keys and titles to the vehicles that were purchased with Head Start funds. In addition, Southern Delaware continues to refuse to turn over to CDI the Head Start facilities, leases, equipment and supplies, and will not allow CDI or DHHS access to its books and records and personnel. (Id.)

9

CDI intends to open the Milford Head Start Center located at 518 N. Church St., Milford, Delaware 19963 and resume providing Head Start services to some of the 196 children and families in the western part of Sussex County, Delaware, as soon as Delaware state authorities grant it a license to do so. (Id.) At a meeting on November 22, 2005, Delaware state authorities indicated to CDI that an appropriate license would issue as early as November 23, 2005, but more likely on November 28, 2005. (Id.) CDI also plans to expand the number of children receiving Head Start services once it has access to the other facilities, equipment, buses, supplies and records. (Id.) Without access to the Southern Delaware Head Start vehicle keys and titles, other facilities, equipment, leases, supplies and records, CDI will be substantially impaired in its efforts to resume providing Head Start services to all 196 children and families. (Id. at 3-4.) Many of those children will continue to be deprived of Head Start services – services which can never be replaced. (Id.)

**ARGUMENT**

**I.     A TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION SHOULD ISSUE IN FAVOR OF DHHS.**

**A.     Legal Standard.**

The purpose of an injunction is to maintain the status quo until a final injunction hearing can be held. Elliott v. Kiesewetter, 98 F.3d 47, 61 (3d Cir. 1996). "The status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (quotations omitted). Here, before DHHS notified Southern Delaware that it intended to terminate Southern Delaware's Grant, 196 children and families residing in the western part of Sussex County, Delaware were enjoying educational, nutritional, health, social and other services provided pursuant to the Head Start program. The requested preliminary injunction is needed to restore Head Start services for those children and families.

"The standard for obtaining a temporary restraining order is the same as the standard for a preliminary injunction." Olde Discount Corp. v. Tupman, 805 F. Supp. 1130, 1135 (D. Del. 1992). In ruling on a motion for a temporary restraining order or preliminary injunction, the Court must consider: (1) the likelihood that the movant will prevail on the merits at the final hearing; (2) the extent to which the movant is irreparably harmed by the conduct complained of; (3) the extent to which the nonmoving party will suffer irreparable harm if the preliminary injunction is issued; and (4) the public interest. Id. at 1136 (quoting Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 191-92 (3d Cir. 1990)). An injunction should issue only if the movant convinces the Court that all four factors favor preliminary relief. Id. (citing

11

Merchants & Evans, Inc. v. Roosevelt Bldg. Prods., Co., 963 F.2d 628, 632-633 (3d Cir. 1992)).

Here, DHHS has met its burden of showing that each factor favors preliminary relief.

**B.    There Is A Reasonable Probability That DHHS Will Succeed On The Merits Of Its Claims.**

To show that the first factor favors preliminary relief, DHHS needs to show only that it

has a "reasonable probability" of succeeding on its claims. United States v. Bell, 414 F.3d 474,

478 n.5 (3d Cir. 2005). DHHS has easily met this standard with respect to each of its requests

for injunctive relief.

**1.    There is a reasonable probability that Southern Delaware is obligated to turn over to CDI all vehicle titles and keys, equipment, supplies and leases that were purchased with Head Start funds.**

All Head Start funds in the possession of Southern Delaware, and all property purchased

with those funds, are the property of the United States. Southern Delaware is unlawfully refusing

to turn over that property to DHHS or its designee, CDI. Accordingly, there is a reasonable

probability that DHHS will succeed in proving a claim for replevin to force Southern Delaware

to return personal property owned by the United States. See, e.g., Harlan & Hollingsworth Corp.

v. McBride, 69 A.2d 9, 11 (Del. 1949) ("In this State replevin is primarily a form of action for

the recovery of the possession of personal property which has been taken or withheld from the

owner unlawfully."). There is also a reasonable probability that DHHS will succeed in proving

its claim for a writ of possession to gain access to facilities that Southern Delaware leased with

Head Start funds. See, e.g., Atl. Props. Group, Inc. v. Deibler, 93M-11-001, 1994 WL 45433, at

*10 (Del. Super. Ct. Jan. 6, 1994) (granting writ of possession).

One of the first cases to hold that federal property in the hands of a grantee remains the

property of the federal government unless and until expended in accordance with the terms of the grant was Buchanan v. Alexander, 46 U.S. 20 (1846). In Buchanan, the Supreme Court rejected an attempt to attach funds held by a purser that were intended to pay the wages of certain seamen by order of the Secretary of the Navy. The Supreme Court explained that "[t]he funds of the government are specifically appropriated to certain national objects, and if such appropriations may be diverted and defeated by state process or otherwise, the functions of the government may be suspended. So long as money remains in the hands of a disbursing officer, it is as much the money of the United States, as if it had not been drawn from the treasury." Buchanan, 46 U.S. at 20-21.

The rule announced in Buchanan has been applied in more recent cases. See, e.g., United States Dep't of Hous. & Urban Dev. v. K. Capolino Constr. Corp., No. 01 Civ. 390(JGK), 2001 WL 487436, at *6 (S.D.N.Y. May 7, 2001) (granting HUD's motion for a preliminary injunction to prevent federal grant funds from being used to satisfy a state court judgment); Neukirchen v. Wood County Head Start, Inc., 53 F.3d 809, 811 (7th Cir. 1995) (rejecting attempt by judgment creditor of Head Start grantee to attach funds and property purchased with Head Start funds because "[i]t is clear in this circuit that property purchased with federal grant funds constitutes federal property"); In re Joliet-Will County Comty. Action Agency, 847 F.2d 430, 432 (7th Cir. 1988) (holding that property purchased with federal grant money was not an asset of the debtor's bankruptcy estate and noting that "[a] number of cases hold that federal funds in the hands of a grantee remain the property of the federal government unless and until expended in accordance with the terms of the grant").

Similarly, in In re Sw. Citizens' Org. for Poverty Elimination, the court ordered the

13

trustee of the estate of a Head Start grantee to turn over property purchased with Head Start funds

to DHHS after DHHS terminated the grantee's participation in the Head Start program. 91 B.R.

278, 287 (Bankr. D.N.J. 1988). The court reasoned that the trustee's rights in the property were

"subject to the federal government's rights under the Head Start legislation – which amount to a

'reversionay interest.'" Id. Once DHHS terminated the grantee's participation in the Head Start

program, the trustee became obligated to turn over the property to DHHS as set forth in the Head

Start regulations. Id.

    In Westmoreland Human Opportunities, Inc. v. Walsh, 246 F.3d 233 (3d Cir. 2001), the

Third Circuit explained the circumstances that allow the United States to assert a property

interest in property purchased with federal grant money superior to that of the grantee. The court

held that "a federal agency's interest in ensuring the efficient administration of program funds

can result in the exclusion of the debtor grantee's [property] interest . . . if the agency's

supervisory controls over the identity of the grantee and the manner of the grantee's performance

are sufficiently pervasive and rigorous." Id. at 246. In Westmoreland, the debtor was awarded

federal grant money pursuant to the Supportive Housing Program. The court held that the money

was the property of the federal government given the United States' extensive control and

supervision over the grant by virtue of the grant agreement, the McKinney Homeless Assistance

Act, and the regulations promulgated thereunder. Id.

    Here, just like in Westmoreland, DHHS maintains extensive control and supervision over

Southern Delaware's Grant by virtue of the Head Start Act and the regulations promulgated

thereunder. Specifically, the Head Start regulations permit DHHS to terminate Southern

Delaware's participation in the Head Start program for specific reasons. See 45 C.F.R.

§ 1303.14(b). Upon termination, DHHS is authorized to order Southern Delaware "to transfer title to [real] . . . property [purchased with Head Start funds] to the Federal Government or to an eligible third party . . . ." 45 C.F.R. § 74.32(c)(3). DHHS may also order Southern Delaware to transfer title to any equipment that DHHS identifies as purchased with Head Start funds to the Federal Government or an eligible third party. 45 C.F.R. § 74.34(h). Upon termination of Southern Delaware's Grant any unused supplies whose aggregate value exceeds $5,000 may be retained by Southern Delaware or sold, but in either case Southern Delaware must "compensate the Federal Government for its share." 45 C.F.R. § 74.35(a).

Given the holdings in the above-described cases, DHHS has shown a reasonable probability that it will succeed in proving its claim to a "reversionary interest" in vehicles, equipment, leases and supplies purchased by Southern Delaware with Head Start funds. See Sw. Citizens', 91 B.R. at 287. Because DHHS terminated Southern Delaware's participation in the Head Start program, there is a reasonable probability DHHS will be able to show that it is entitled to a permanent injunction forcing Southern Delaware to comply with the Head Start regulations and turn over all Head Start vehicle titles and keys, equipment, supplies[3] and leases in its possession to CDI, and provide access to the Laverty Lane and Administrative Office facilities.

---

[3]If Southern Delaware does not turn over its Head Start supplies to CDI, it will be required to compensate the United States for all Head Start supplies in Southern Delaware's possession whose aggregate value exceeds $5,000. 45 C.F.R. § 74.35(a).

15

> **2.    There is a reasonable probability that Southern Delaware is obligated to provide DHHS with timely and unrestricted access to any books, documents, papers, or other records pertinent to Southern Delaware's Grant, and timely and reasonable access to Southern Delaware's personnel.**

Head Start grantees are obligated to retain "financial records, supporting documents, statistical records, and all other records pertinent to an award" for a period three years from the date of the submission of each annual application for Head Start funds. 45 C.F.R. § 74.53(b). Upon information and belief, Southern Delaware has possession of such books and records at its Administrative Office facility and elsewhere. "HHS awarding agencies, the HHS Inspector General, the U.S. Comptroller General, or any of their duly authorized representatives, have the right of timely and unrestricted access to any books, documents, papers, or other records of recipients that are pertinent to the awards, in order to make audits, examinations, excerpts, transcripts and copies of such documents. This right also includes timely and reasonable access to a recipient's personnel for the purpose of interview and discussion related to such documents." 45 C.F.R. § 74.53(e). Southern Delaware has so far unlawfully refused to provide DHHS and CDI access to its books and records and personnel.

Accordingly, DHHS has shown a reasonable probability that it will succeed on its declaratory judgment claim that Southern Delaware is obligated to provide DHHS with timely and unrestricted access to Southern Delaware's books and records, and timely and reasonable access to Southern Delaware's personnel, pursuant to 45 C.F.R. § 74.53(e). DHHS has also shown a reasonable probability that it will succeed in proving that it is entitled to an injunction ordering Southern Delaware to allow DHHS and CDI access to its books and records and personnel. See 28 U.S.C. § 2202 ("Further necessary or proper relief based on a declaratory

16

judgment or decree may be granted, after reasonable notice and hearing, against any adverse

party whose rights have been determined by such judgment.").

>    **3.    There is a reasonable probability that Southern Delaware is obligated
>    to provide DHHS with a final inventory that lists all equipment
>    acquired with HHS funds or that is otherwise federally owned.**

Pursuant to 45 C.F.R. § 74.34(h)(2) DHHS is authorized to order Southern Delaware to

provide it with a "final inventory that lists all equipment acquired with HHS funds and federally-

owned equipment." Despite requests by DHHS, so far Southern Delaware has refused to provide

such a final inventory.

Accordingly, DHHS has shown a reasonable probability that it will succeed on its

declaratory judgment claim that Southern Delaware is obligated to provide a final inventory upon

request pursuant to 45 C.F.R. § 74.34(h)(2). DHHS has also shown a reasonable probability that

it will succeed in proving that it is entitled to an injunction ordering Southern Delaware to

provide such a final inventory. See 28 U.S.C. § 2202.

> **C.    DHHS And The Head Start Beneficiaries Will Be Irreparably Harmed
> Absent Relief.**

The second factor the Court must consider before granting a motion for a temporary

restraining order or preliminary injunction is the extent to which the movant will be irreparably

harmed absent relief. As described in the Declaration of Robert Sullivan at pages 3-4, CDI will

be substantially impaired in its efforts to provide Head Start services to the children and families

in the western part of Sussex County, Delaware without the vehicle titles and keys, facilities,

equipment, supplies and leases in Southern Delaware's possession, or without access to Southern

Delaware's records. Many courts have granted injunctions because of the risk that beneficiaries

17

of federal programs will be irreparably harmed if they lose their benefits. See, e.g., Morel v.

Giuliani, 927 F. Supp. 622, 635 (S.D.N.Y. 1995) (collecting cases that hold that "[t]o indigent

persons, the loss of even a portion of subsistence benefits constitutes irreparable injury").

Accordingly, the second factor favors granting DHHS its requested relief.

**D.    Southern Delaware Will Not Be Irreparably Harmed If Enjoined.**

The third factor the Court must consider before granting preliminary injunctive relief is

the extent to which the nonmoving party will suffer irreparable harm if the preliminary injunction

is issued. As set forth above, given DHHS' decision to terminate Southern Delaware's

participation in the Head Start program, Southern Delaware has no right to retain any vehicles,

equipment or leases purchased with Head Start funds, or to refuse DHHS access to its books and

records. Southern Delaware has exercised its right to appeal its termination to the DAB and it

has requested a hearing. See 45 C.F.R. § 1303.13(f). The hearing on Southern Delaware's

appeal is scheduled for November 30, 2005. If Southern Delaware is successful in its appeal,

appropriate and authorized funding for its Head Start programs may resume. 45 C.F.R.

§ 1303.14(f)(2). If Southern Delaware is not successful before the DAB, it can appeal the DAB's

decision in federal court pursuant to the Administrative Procedures Act. See 5 U.S.C. § 702

(conferring federal jurisdiction to "[a] person suffering legal wrong because of agency action, or

adversely affected or aggrieved by agency action within the meaning of a relevant statute"). If

Southern Delaware can convince the DAB or a federal court that it was improperly terminated

from the Head Start program, it can recover any property it turns over to CDI. Accordingly,

Southern Delaware will not be irreparably harmed by an injunction.[4]

**E.     The Public Interest Favors Issuing The Requested Injunction.**

The final factor the Court must consider before granting preliminary injunctive relief is any public interest in whether the injunction issues. Here, the public interest clearly favors ordering Southern Delaware to comply with federal regulations and turn over Head Start property to CDI so that CDI can begin to restore Head Start benefits for the 196 children and families in the western part of Sussex County, Delaware. See, e.g., Doe v. Miller, 573 F. Supp. 461, 469 (N.D. Ill. 1983) (enjoining enforcement of Illinois state policies that would have forced alien parents to withdraw their federal food stamp applications because "the issuance of the injunction clearly will not disserve the public interest since it enforces clearly mandated federal policy with regard to the administration of the food stamp program"). Every day these children – most of whom only participate in Head Start for one academic year – are losing valuable educational, nutritional, health, social and other services that can never be replaced, all because Southern Delaware has refused to make available the vehicles, equipment, supplies and facilities that it purchased with federal funds. Accordingly, all four factors favor granting DHHS its requested injunction.

---

[4]Given that Southern Delaware has a statutory right to appeal its termination from the Head Start program to the DAB and in federal court, this Court need not and should not consider whether Southern Delaware's Grant was properly terminated. That issue will be decided at a later date.

## CONCLUSION.

For all the foregoing reasons, DHHS respectfully requests that the Court issue a temporary restraining order, or, in the alternative, a preliminary injunction, ordering the Defendants to:

(1)    Immediately grant CDI and DHHS access to the Laverty Lane Child Care Center at 2 Laverty Lane, Bridgeville, Delaware 19933 and the Southern Delaware Administrative Office at 18907 Unit 4 Maranatha Way, Bridgeville, Delaware 19933, and turn over to CDI or DHHS the leases associated with those facilities;

(2)    Immediately turn over to CDI or DHHS all vehicle keys and titles possessed by Southern Delaware that were purchased with Head Start funds, and all equipment and supplies that Southern Delaware possesses that were purchased with Head Start funds;

(3)    Immediately provide DHHS with a final inventory that lists all equipment Southern Delaware acquired with Head Start funds or that is otherwise federally owned; and

(4)    Immediately grant CDI and DHHS unrestricted access to any books, documents, papers, or other records of recipients that are pertinent to Southern Delaware's Grant, in order to make audits, examinations, excerpts, transcripts and copies of such documents, and grant CDI and DHHS timely and reasonable access to a Southern Delaware's personnel for the purpose of interview and discussion related to such documents.

DATED: November 23, 2005

20

Respectfully Submitted,

COLM F. CONNOLLY
United States Attorney

By:  /s/ Seth M. Beausang
    Seth M. Beausang (I.D. No. 4071)
    Assistant United States Attorney
    Attorney for the United States
    The Nemours Building
    1007 Orange Street, Suite 700
    P.O. Box 2046
    Wilmington, DE 19899-2046
    (302) 573-6277
    seth.beausang@usdoj.gov