

**U.S. Department of Justice**

*United States Attorney's Office*
*District of Delaware*

---

| | |
|---|---|
| *1007 N.Orange Street, Suite 700* | *(302) 573-6277* |
| *P.O. Box 2046* | *FAX (302) 573-6220* |
| *Wilmington, Delaware 19899-2046* | *TTY (302) 573- 6274* |
| | *Toll Free (888) 293-8162* |

December 20, 2005

<u>VIA E-FILING</u>

The Honorable Kent A. Jordan
U.S. District Court, District of Delaware
J. Caleb Boggs Federal Building
Room 6325
Lockbox 10
844 King Street
Wilmington, DE 19801

       Re:    <u>United States Department of Health and Human Services. v. Southern Delaware</u>
              <u>Center for Children and Families, Inc. ("Southern Delaware") et al., No. 05-809 (D.</u>
              <u>Del.)</u>

Dear Judge Jordan:

       The United States contends that the Defendants have failed – in several important ways – to comply with the Court's December 7, 2005 Order.  As the Court directed most recently on December 13, 2005, I have tried on several occasions to contact Defendants Francis A. Ogundare and Carolyn Williams to discuss the Court's Order and resolve our differences.  Unfortunately, most of my phone calls and letters have gone unanswered.  In addition, most of my requests have been refused.  Given the Defendants' refusal to fully comply with the Court's Order and near-refusal to speak to the government, I respectfully request that the Court schedule an in-person conference, or, alternatively, a conference by telephone, with the United States and Mr. Ogundare and Ms. Williams as soon as possible.[1]  I respectfully submit that a conference with the Court may be the only way – short of the United States filing a motion to order the Defendants to show cause why they not be held in contempt – to convince the Defendants to comply with the Court's Order.

       I note that Ms. Williams indicated during an earlier conference with the Court that Southern Delaware could not return certain equipment and property to the United States because, essentially,

---

      [1]It is important that <u>both</u> Mr. Ogundare and Ms. Williams participate in any such conference because, as detailed below, Mr. Ogundare has repeatedly responded to my inquiries by stating that I need to get information from Ms. Williams, and vice versa.  The United States prefers an in-person conference/hearing so that Ms. Williams and Mr. Ogundare can be questioned under oath, if necessary.

approximately 65% of the cost of Southern Delaware's Head Start property was paid for with federal funds, and 35% with state funds. Attached is a letter from the Delaware Secretary of Education Valerie A. Woodruff giving the United States permission to temporarily take possession of any property that Southern Delaware purchased with Delaware Early Childhood Assistance Program ("ECAP") funds. (Exhibit L.) Accordingly, Southern Delaware should not be permitted to continue to refuse to return Head Start property based on the State of Delaware's alleged ownership interest in that property.

I regret having to ask the Court to intervene in this matter. However, the interim Head Start grantee, Community Development Institute ("CDI"), has enrolled children to receive Head Start services at the Laverty Lane Center and a site in Seaford, but is having substantial difficulties in beginning services at those sites without the Head Start vehicles, equipment, supplies, records and final inventory, and access to the Laverty Lane Center. *No children have received Head Start services at the Laverty Lane Center or in Seaford since Southern Delaware terminated operations on November 2, 2005.*

Below is a summary of the ways the United States contends the Defendants have failed to comply with the Court's Order, followed by a summary of the United States' efforts to negotiate a resolution with the Defendants.

## The Defendants Have Failed To Comply With The Court's Order

Laverty Lane Center: The Court ordered the Defendants to "Immediately grant . . . [CDI] and DHHS such access to the Laverty Lane Child Care Center . . . as is possessed by the Defendants and turn over to CDI or DHHS any leases associated with th[at] facilit[y]."

On November 28, 2005, Mr. Ogundare signed on behalf of Southern Delaware a document that purported to give CDI the right to access the Laverty Lane Center. (Exhibit A.) However, David Lett with the Administration for Children and Families ("ACF") learned from Rebecca Kaufman with the Delaware State Housing Authority ("DSHA") (the entity that leases the Laverty Lane Center to Southern Delaware) that someone from Southern Delaware called DSHA shortly thereafter and said that document was signed under duress, and, in effect, Southern Delaware was rescinding permission for use of the Laverty Lane Center by CDI. (Exhibit B, Lett Decl. at 1.) On December 8, 2005, Ms. Williams allowed Thelma Sims with CDI to access one room in the Laverty Lane Center and retrieve children's records. (Exhibit C, Sims Decl. at 1.) Ms. Sims was not allowed to retrieve any employee records or equipment. (Id.) *Since December 8, 2005, Southern Delaware has not allowed CDI access to the Laverty Lane Center.* (Id.)

Counsel for DSHA has told me that DSHA will allow CDI access to the Laverty Lane Center if Southern Delaware will sign a document giving CDI permission to access that center. On December 19, 2005, I spoke to Mr. Ogundare and asked him if he would sign another document giving CDI permission to access that center. Mr. Ogundare first said "no," but then said "maybe" he would have his attorney draw something up. I asked Mr. Ogundare if he was represented by an attorney; he said he was but refused to identify that attorney. I then asked Mr. Ogundare to have his

attorney call me; that never happened.

Final Inventory: The Court ordered the Defendants to "Immediately provide DHHS with a final inventory that lists all equipment Southern Delaware acquired with Head Start funds or that is otherwise federally owned. . . ."

In the evening of December 7, 2005, Southern Delaware faxed to ACF and CDI a document that did not appear to be a final inventory of equipment because, with one exception, it listed equipment that was counted over a year-and-a-half ago in March, 2004. (Exhibit D.) No vehicles appeared on that document. (Id.) On December 13, 2005, Mr. Ogundare gave Thelma Sims another document dated December 12, 2005, that listed seven vehicles. (Exhibit C at 2; see also Exhibit E.) On December 19, 2005, I asked Mr. Ogundare if the document faxed on December 7, 2005, was a final inventory, and if there were any Head Start vehicles not listed on the document dated December 12, 2005. *Mr. Ogundare told me that Ms. Williams would have to answer those questions. Ms. Williams has not returned my phone calls since December 14, 2005.*

Vehicle Titles And Keys: The Court order the Defendants to "Immediately turn over to CDI or DHHS all vehicle keys and titles possessed by Southern Delaware that were purchased with Head Start funds . . . ."

On December 8, 2005, Ms. Williams gave Ms. Sims keys to eight vehicles, although Ms. Williams subsequently told Ms. Sims that one set of keys was the wrong set, meaning CDI has keys to seven vehicles. (Exhibit C at 1.) On December 19, 2005, Mr. Ogundare gave Anita Vestal with CDI titles to the same seven vehicles. (Exhibit F, Vestal Decl. at 1.) *Both Mr. Ogundare and Ms. Williams have repeatedly refused to tell me whether Southern Delaware has any Head Start vehicles other than the seven turned over.* However, the United States has evidence that Southern Delaware has at least eleven vehicles titled in its name in Delaware (including the seven turned over to CDI). (Exhibit G.) In addition, Constance C. Moran with the Delaware ECAP states that no Delaware ECAP funds were given to Southern Delaware for the purpose of buying vehicles, except for one van purchased in 1998. (Exhibit H at1.) In any event, Delaware Secretary of Education Woodruff has given the United States permission to temporarily take possession of any property that Southern Delaware paid for with Delaware ECAP funds. (Exhibit L.)

Comparing Exhibit E (the list of seven vehicles that Southern Delaware turned over) with Exhibit G (the list of vehicles titled in Southern Delaware's name) suggests that Southern Delaware owns at least five vehicles that it has not turned over to the United States: a 2002 GMC, tag number CL024524; a 1996 GMC, tag number C0020673; a 1993 Chevrolet, tag number CL074586; a 1999 GMC, tag number CL091132; and a 1998 Dodge (paid for with ECAP funds), tag number PC091300.

Seaford Center: The Court ordered the Defendants to "Immediately turn over to CDI or DHHS . . . all equipment and supplies that Southern Delaware possesses that were purchased with Head Start funds," including, the Court indicated during the hearing, all such equipment and supplies located at the Seaford Center.

On December 19, 2005, Mr. Ogundare turned over to CDI some children's records for the Seaford Center. (Exhibit F at 1.) *However, CDI has never been given access to the Seaford Center to retrieve Head Start equipment.* (Exhibit C at 1.) On November 19, 2005, Mr. Ogundare told me that Southern Delaware does not have access to the Seaford Center. However, on December 15, 2005, Mr. Lett learned from Dolores Slatcher, the Seaford City Manager (the City of Seaford owns the Seaford Center), that Southern Delaware had not returned the Seaford Center keys to the City. (Exhibit B at 1.)

Records: The Court ordered the Defendants to "Immediately grant CDI and DHHS unrestricted access . . . to any . . . records that are pertinent to Southern Delaware's Grant," as well as "timely and reasonable access to all of Southern Delaware's personnel for the purpose of interview and discussion related to such documents."

CDI has received some children's records for the Milford, Seaford and Laverty Lane Centers, as well as records related to Southern Delaware's Child and Adult Care Food Program application. (Exhibit F at 1.) However, CDI has only received employee records for six former Southern Delaware employees. (Id.) Before its grant was terminated, Southern Delaware operated with approximately forty-three employees. (Exhibit B at 1.)

## Summary Of The United States' Contacts With The Defendants

Following the hearing on December 7, 2005, a conference call was convened between representatives of CDI, and ACF. (Exhibit B at 1; Exhibit C at 1.) It was agreed during that call that CDI and ACF would immediately contact Mr. Ogundare and Ms. Williams regarding the Court's Order. (Id.)

On December 7, 2005, representatives of ACF and CDI spoke to Ms. Williams and described what Southern Delaware needed to do to comply with the Court's Order. (Exhibit C at 1.) The Defendants agreed to provide a final inventory. (Id.) In addition, Ms. Williams agreed to meet CDI the next day to provide access to the Administrative Office and Laverty Lane Center, and keys and titles to vehicles. (Id.)

In the evening of December 7, 2005, Southern Delaware faxed to ACF and CDI a document that did not appear to be a final inventory of equipment because, with one exception, it listed equipment that was counted over a year-and-a-half ago in March, 2004. (Exhibit D.) Also, no vehicles appeared on that document. (Id.)

On December 8, 2005, Ms. Williams met Thelma Sims at the Administrative Office. (Exhibit C at 1.) Ms. Williams gave Ms. Sims keys to eight vehicles, although Ms. Williams subsequently told Ms. Sims that one set of keys was the wrong set, meaning CDI has keys to seven vehicles. (Id.) Ms. Sims also received keys to the Administrative Office. (Id.)

Ms. Williams and Ms. Sims then went to the Laverty Lane Center where they met Beverly Young with the DSHA (the entity that leases the Laverty Lane Center to Southern Delaware). (Id.)

- 4 -

*Ms. Williams allowed Ms. Sims to access one room in the Laverty Lane Center – an office that contained children's records which were given to Ms. Sims.* (Id.) *Ms. Sims was not given any employee records.* (Id.) *Ms. Sims was also not allowed to go to any other part of the Laverty Lane Center to collect Head Start equipment and supplies.* (Id.) *Since December 8, 2005, no one from CDI or ACF has been allowed inside the Laverty Lane Center.* (Id.)

Also on December 8, 2005, Ms. Sims asked Ms. Williams for titles to Head Start vehicles and a final inventory of Head Start equipment. (Id.) Ms. Sims explained to Ms. Williams that the document faxed on December 7, 2005 (Exhibit D), could not be a final inventory because the items listed were counted in March, 2004, and also because that document did not list any vehicles. (Exhibit C at 1.) Ms. Williams said she would get the titles and inventory for Ms. Sims the following day. (Id.)

On December 9, 2005, Ms. Williams called Ms. Sims and said she was on her way to Georgetown, Delaware to pick up duplicate titles for the vehicles. (Id.) Ms. Williams said she would call Ms. Sims on her way back and arrange to meet at the Taco Bell in Seaford, Delaware (where Mr. Ogundare works) and deliver the titles and inventory. (Id.) Ms. Williams called Ms. Sims at approximately 5:30 p.m. and asked why Ms. Sims was not at Taco Bell. (Id.) Ms. Sims explained that she was waiting for Ms. Williams to call. (Id.) She offered to meet Ms. Williams at Taco Bell, but Ms. Williams said she would put the requested documents in an envelope and under the door of the Administrative Office the next day. (Id.)

On Saturday, December 10, 2005, Ms. Sims went to the Administrative Office but could find no envelope. (Id.) She called Ms. Williams and left a message that was not returned. (Id.) CDI removed equipment, including some computers, from the Administrative Office. (Id.) The computers that were at the Administrative Office were older computers that were not Dell computers. (Id.) However, financial records obtained by the government indicate that someone using a Southern Delaware credit card made a $1,064 purchase from Dell in May, 2005. (Exhibit I at 2.) No Dell computers appeared on the document faxed to ACF and CDI on December 7, 2005. (Exhibit D.) In addition, a maintenance worker at the Administrative Office told Ms. Sims that there previously had been newer-looking Dell computers at the Administrative Office. (Exhibit C at 1-2.)

Also on December 10, 2005, CDI removed some children's records and records relating to Southern Delaware's Child and Adult Food Care Program application from the Administrative Office. (Id. at 2.) Ms. Sims attempted to remove a large locked file cabinet but could not because it was filled, presumably with records. (Id.) Ms. Sims called Ms. Williams to ask for the key to the file cabinet but that call was not returned. (Id.) Ms. Sims was not able to locate any employee records at the Administrative Office. (Id.)

On December 12, 2005, I called Ms. Williams and asked her to provide CDI with a final inventory of all Head Start equipment, and keys and titles to all Head Start vehicles. I also asked her if Southern Delaware was contending that the document faxed to CDI and ACF on December 7, 2005 was a "final inventory," and whether Southern Delaware had any Head Start vehicles other than the seven vehicles for which keys had been provided. *Ms. Williams told me she did not know the answers*

*to my questions and told me to call Mr. Ogundare.*

I then called Mr. Ogundare and asked the same questions and made the same requests. Mr. Ogundare told me he would call me the following morning with an update as to when the United States could expect Southern Delaware to comply with these requests. I then faxed a letter to Mr. Ogundare and Ms. Williams to make clear to them exactly what the United States was requesting. (Exhibit J (previously filed with the Court).) *Mr. Ogundare did not call me the next day.*

Also on December 12, 2005, Ms. Sims spoke to Ms. Williams and asked her for the vehicle titles and final inventory. (Exhibit C at 2.) Ms. Williams replied that someone from Southern Delaware would deliver the titles to CDI that day. (Id.) That never happened. (Id.)

In the evening of December 12, 2005, Mr. Ogundare called Ms. Sims and said Ms. Williams had dropped off the information Ms. Sims needed and asked Ms. Sims to pick up the information the next day at Taco Bell. (Id.)

On December 13, 2005, Ms. Sims went to Taco Bell where an employee gave here a document signed by Mr. Ogundare dated December 12, 2005 that listed seven vehicles. (Id.; see also Exhibit E.) Ms. Sims was told Mr. Ogundare was not available to speak to her regarding the document. (Exhibit C at 2.)

Also on December 13, 2005, the Court held a telephone conference with Ms. Williams and Rudolph Contreras of the United States Attorney's Office and directed the parties to talk and try to resolve their differences.

On December 14, 2005, I left two messages for Ms. Williams asking her to please call me. *Those messages were not returned.* I did speak to Mr. Ogundare. I asked him about the final inventory and Head Start vehicle keys and titles; *he said I needed to talk to Ms. Williams. Mr. Ogundare agreed to call a person at the DSHA whose number I provided and tell DSHA that CDI could use the Laverty Lane Center. However, I understand no such call was ever received by the DSHA.*

On December 15, 2005, I left messages for Ms. Williams and Mr. Ogundare asking them each to please call me. *Those messages were not returned.*

On December 16, 2005, I left messages for Ms. Williams and Mr. Ogundare asking them to please call me. *Those messages were not returned.* I also sent by fax – to Mr. Ogundare – and by Fed Ex – to Ms. Williams – a letter detailing what the United States wanted the Defendants to do to comply with the Court's Order, and asking them both to please call me by December 19, 2005. (Exhibit K.)

On December 19, 2005, I received a phone call from Mr. Ogundare who told me that he had at

Taco Bell titles to seven vehicles and some records.[2]  I asked Mr. Ogundare if he received my letter, and if he would discuss with me Southern Delaware's final inventory, the Head Start vehicle keys and titles, employee records, the Laverty Lane Center and the Seaford Center.  *Mr. Ogundare essentially told me that I would have to discuss those things with Ms. Williams.*  I told Mr. Ogundare that Ms. Williams had not called me and I asked him to ask her to call me.  With respect to the Laverty Lane and Seaford Centers, however, Mr. Ogundare told me that Southern Delaware did not have access to those centers.  I then asked Mr. Ogundare if he would sign a document giving CDI access to the Laverty Lane Center.  Mr. Ogundare first said "no," but then said "maybe" he would have his attorney draw something up.  I asked Mr. Ogundare if he was represented by an attorney; he said he was but refused to identify that attorney.  I then asked Mr. Ogundare to have his attorney call me; that never happened.  *I then called and left a message for Ms. Williams that has not been returned.*

## Conclusion

Again, I regret having to ask the Court to intervene in this matter.  However, the United States contends that the Defendants are refusing to comply with the Court's Order and refusing to speak with me to discuss ways to resolve this matter.  By doing so, the Defendants are substantially impairing CDI's efforts to resume Head Start services for children in Sussex County.  Many of those children have been without Head Start services since November 2, 2005.  I respectfully submit that a conference with the Court may be the only way – again, short of the United States filing a motion to show cause – to convince the Defendants to communicate with the United States and comply with the Court's Order.

I am available at the call of the Court to address any questions or concerns.

Respectfully,

COLM F. CONNOLLY
United States Attorney

By:    /s/ Seth M. Beausang
Seth M. Beausang (I.D. No. 4071)
Assistant United States Attorney

cc:    Francis A. Ogundare (by overnight Fed Ex and fax to (302) 629-6704, w/attachment)
Carolyn Williams (by overnight Fed Ex and fax to (302) 628-3001, w/attachment)

---

[2]Ms. Vestal picked up the titles and records at Taco Bell that same day.  (Exhibit F at 1.)