IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UNITED STATES DEPARTMENT OF :
HEALTH AND HUMAN SERVICES, :
:
    Plaintiff, :
:
    v. : Civil Action No. 05-809-KAJ
:
SOUTHERN DELAWARE CENTER :
FOR CHILDREN AND FAMILIES, INC. :
FRANCIS A. OGUNDARE, CAROLYN :
WILLIAMS, REVEREND LEON :
WILLIAMS, WILLIAM B. DUFFY, :
WALLACE F. HANDY, KATHERINE :
H. LEWIS, DEBORAH WASHINGTON :
and ROSAMAE I. SMITH, :
:
    Defendants. :

**MEMORANDUM OF LAW IN SUPPORT OF A PROPOSED ORDER IMPOSING SANCTIONS ON DEFENDANTS WILLIAMS AND OGUNDARE FOR CIVIL CONTEMPT OF THE COURT'S DECEMBER 7, 2005 ORDER**

                                     COLM F. CONNOLLY
                                     United States Attorney

                       By:  Seth M. Beausang (I.D. No. 4071)
                           Assistant United States Attorney
                           Attorney for the United States
                           The Nemours Building
                           1007 Orange Street, Suite 700
                           P.O. Box 2046
                           Wilmington, DE 19899-2046
                           (302) 573-6277
                           seth.beausang@usdoj.gov

DATED: December 23, 2005.

## TABLE OF CONTENTS

    **PAGE**

TABLE OF AUTHORITIES .................................................................. ii

NATURE AND STAGE OF THE PROCEEDING AND STATEMENT OF FACTS ......... 1

SUMMARY OF THE ARGUMENT ........................................................... 6

ARGUMENT ............................................................................................. 7

    I.    STANDARDS FOR IMPOSING SANCTIONS FOR CIVIL CONTEMPT. ..... 7

    II.    DEFENDANTS WILLIAMS AND OGUNDARE SHOULD BE FOUND IN CIVIL CONTEMPT OF THE COURT'S DECEMBER 7, 2005 ORDER. ...... 8

    III.    AN APPROPRIATE SANCTION IS TO REQUIRE WILLIAMS AND OGUNDARE TO PAY A COERCIVE, PER DIEM FINE UNTIL THEY COMPLY WITH THE COURT'S ORDER. ............................................ 9

CONCLUSION ........................................................................................ 12

## TABLE OF AUTHORITIES

**CASE**                                                                                                   **PAGE**

<u>Chirstian Sci. Bd. of Dirs. of the First Church of Christ v. Robinson</u>,
    123 F. Supp. 2d 965 (W.D.N.C. 2000) .................................................. 10

<u>Fed. Trade Comm'n v. Gill</u>,
    183 F. Supp. 2d 1171 (C.D. Cal. 2001) .................................................. 10

<u>Gompers v. Bucks Stove & Range Co.</u>,
    221 U.S. 418 (1911) ......................................................................... 7

<u>Int'l Union, United Mine Workers of Am. v. Bagwell</u>,
    512 U.S. 821 (1994) ....................................................................... 7, 8

<u>Roe v. Operation Rescue</u>,
    54 F.3d 133 (3d Cir. 1995) ................................................................ 8

<u>Shillitani v. United States</u>,
    384 U.S. 364 (1966) ......................................................................... 7

<u>United States v. United Mine Workers of Am.</u>,
    330 U.S. 258 (1947) ......................................................................... 9

<u>United States v. Colorado Mufflers Unlimited, Inc.</u>,
    No. 03-CV-1310-WDM-CBS, 2005 WL 2248862, at *1 (D. Colo. Aug. 2, 2005) .... 10

<u>United States v. Richmond</u>,
    No. 02C-1559, 2004 WL 2284286 (N.D. Ill. July 28, 2004) .................. 10, 11

<u>United States v. Scott</u>,
    No. 4:03-CV-1410-A, 2004 WL 1068118 (N.D. Tex. Apr. 5, 2004) ............... 11

<u>Wesley Jessen Corp. v. Bausch & Lomb, Inc.</u>,
    256 F. Supp. 2d 228 (D. Del. 2003) ..................................................... 8

## NATURE AND STAGE OF THE PROCEEDINGS AND STATEMENT OF FACTS

### A.   Background

The Southern Delaware Center for Children and Families ("Southern Delaware") is a Delaware corporation, non-profit organization and the recipient of a federal grant awarded pursuant to the Head Start Act, 42 U.S.C. § 9831, et seq., and the regulations promulgated thereunder, 45 C.F.R. Parts 1301-1311 (2005). The Administration for Children and Families ("ACF"), a division of the Department of Health and Human Services ("DHHS"), is the entity charged with administering the Head Start program.

On October 28, 2005, David Lett, the Regional Administrator for ACF who oversees Southern Delaware's grant, notified Southern Delaware Board of Directors President Francis A. Ogundare by letter that Southern Delaware's Grant was summarily suspended for an indefinite period. Also on October 28, 2005, Lett made the first of many requests to representatives of Southern Delaware that Southern Delaware provide the interim grantee, Community Development Institute ("CDI"), and DHHS with access to the facilities, vehicles, property, equipment and supplies that Southern Delaware purchased with Head Start funds, as well as Southern Delaware's Head Start records. On November 2, 2005, Southern Delaware ceased providing Head Start services. On November 3, 2005, Lett sent Ogundare a letter notifying Southern Delaware that ACF intended to terminate Southern Delaware's grant.

On November 22, 2005, DHHS filed a Complaint in this Court against Southern Delaware and its Board of Directors ("Defendants") seeking access to Southern Delaware's Head Start vehicle keys and titles, facilities, equipment, leases, supplies and records, and the return of any Head Start funds that were not spent in accordance with Southern Delaware's grant. (Doc.

1

No. 1.) On November 23, 2005, DHHS filed a Motion For A Temporary Restraining Order, Or, In The Alternative, A Preliminary Injunction seeking to compel Southern Delaware to turn over Head Start property and records and provide a final inventory, all so CDI could quickly resume Head Start services to children who had been receiving those services prior to November 2, 2005. (Doc. No. 2.) The Court ordered Defendants to file their response to DHHS' Motion by December 5, 2005, and scheduled a hearing for December 7, 2005. (Doc. No. 9.)

Defendants, proceeding pro se, did not file a response to DHHS' Motion. Nor did Defendants appear at the hearing until after the Court had taken evidence, made findings of fact and decided to issue an Order compelling Defendants to turn over to CDI and DHHS certain Head Start property and records, and to provide a final inventory. (Doc. No. 26, attached as Exhibit A.) After the hearing, Defendant Carolyn Williams, Southern Delaware's Executive Director, appeared and, after being afforded an opportunity to address the Court, was handed a copy of the Court's Order.

### B. Williams And Ogundare Refuse To Comply With The Court's Order

Since the Court issued its Order on December 7, 2005, representatives of ACF, CDI and the United States Attorney's Office for the District of Delaware have made numerous attempts to communicate with Williams and Ogundare and convince them to comply with the Court's Order. Those attempts – which, for the most part, have failed – are detailed in the letter filed with the Court on December 20, 2005 (the "Letter"). (Doc. No. 32.)

As demonstrated in the Letter, Williams and Ogundare had notice of the Court's Order – Williams was handed a copy of the Court's Order at the December 7, 2005 hearing; Ogundare received two letters from the United States Attorney's Office referring to and quoting from the

2

Order. (Letter, Exhibits J & K.) In addition, there is clear and convincing evidence that Williams and Ogundare can comply with the Court's Order, but are refusing to do so.

For example, the Court ordered Defendants to provide CDI with access to the Laverty Lane Center. On December 8, 2005, Williams allowed Thelma Sims with CDI to access one room of the Laverty Lane Center, but refused to turn over possession of the Laverty Lane Center to CDI at that time. (Letter at 2.) Clearly, Williams has access to that center and can comply with the Court's Order. On November 28, 2005, Ogundare signed a document giving CDI permission to access to the Laverty Lane Center although that permission was subsequently rescinded. (Id.) When asked on December 19, 2005 to sign a similar document allowing CDI to access the Laverty Lane Center, Ogundare refused. (Id.) Accordingly, there is clear and convincing evidence that Williams and Ogundare are refusing to give CDI access to the Laverty Lane Center.

The Court also ordered Defendants to provide CDI with a final inventory of all equipment purchased with Head Start funds. On December 7, 2005, Ogundare faxed to DHHS a document that did not appear to be a final inventory of equipment because, with one exception, it listed equipment that was counted over a year-and-a-half ago in March, 2004. (Letter, Exhibit D.) Also, no vehicles appeared on that document even though Southern Delaware possessed Head Start vehicles. (Id.) On December 13, 2005, Ogundare gave Sims another document dated December 12, 2005, that listed seven vehicles. (Letter, Exhibit C at 2; see also Letter, Exhibit E.) Ogundare and Williams have repeatedly refused to say whether these two documents together are supposed to be a final inventory, or whether Southern Delaware has any Head Start vehicles other than the seven vehicles listed on the December 12, 2005 document. (Letter at 3.)

3

Thus, there is clear and convincing evidence that Ogundare and Williams can provide CDI with a final inventory as the Court ordered, but are refusing to do so.

The Court also ordered Defendants to turn over all Head Start vehicle keys and titles. On December 8, 2005, Williams gave Sims keys to eight vehicles, although Williams subsequently told Sims that one set of keys was the wrong set, meaning CDI has keys to seven vehicles. (Id.) On December 19, 2005, Ogundare gave Anita Vestal with CDI titles to the same seven vehicles (Id.) Ogundare and Williams have repeatedly refused to say whether Southern Delaware has any Head Start vehicles other than the seven vehicles turned over. (Id.) However, the United States has evidence that suggests that Southern Delaware owns at least five vehicles that it has not turned over to the United States. (Id.) Accordingly, there is clear and convincing evidence that Williams and Ogundare can turn over all of Southern Delaware's Head Start vehicle keys and titles, but are refusing to do so.

The Court also ordered Defendants to turn over to CDI all of Southern Delaware's Head Start equipment and supplies, including any Head Start equipment and supplies at the Seaford Center. CDI has never been given access to the Seaford Center so it can retrieve Head Start equipment and supplies. (Id. at 4.) On December 15, 2005, Lett learned from Dolores Slatcher, the Seaford City Manager (the City of Seaford owns the Seaford Center), that Southern Delaware has not returned the Seaford Center keys to the City. On December 19, 2005, Ogundare turned over some of the children's records for the Seaford Center, but no employee records, equipment or supplies. (Letter, Exhibit F.) Accordingly, there is clear and convincing evidence that Ogundare and Williams have access to the Seaford Center, but are refusing to give CDI access to that center so it can retrieve Head Start equipment and supplies.

The Court also ordered the Defendants to immediately grant CDI and DHHS unrestricted access to any records that are pertinent to Southern Delaware's grant. Williams and Ogundare have turned over some children's records and records for six of Southern Delaware's former employees. (Letter at 4.) Before its grant was terminated, Southern Delaware operated with approximately forty-three employees. (Id.) Accordingly, there is clear and convincing evidence that Williams and Ogundare are refusing to turn over all of Southern Delaware's Head Start records as the Court ordered.

### C.     The Court Orders A Show Cause Hearing

On December 21, 2005, after receiving the United States' Letter, the Court attempted to contact Williams and Ogundare to include them in a telephone conference, but was unable to do so. The Court then held a telephone conference with the United States ex parte, after which the Court ordered that a hearing be scheduled for 10:00 a.m. on December 29, 2005, to allow Defendants to show cause why they should not be held to have violated the Court's Order. (Exhibit B, Transcript of December 21, 2005 teleconference; Exhibit C, Order.) The Court directed the United States to prepare a show cause order and suggest appropriate next steps if such a show cause order were granted. (Exhibit B at 4.) This is the United States' Memorandum Of Law In Support Of A Proposed Order Imposing Sanctions On Defendants Williams And Ogundare For Civil Contempt Of The Court's December 7, 2005 Order. A proposed Order is filed in connection herewith. (Exhibit D.)

## SUMMARY OF THE ARGUMENT

1.  Courts have the inherent authority to enforce their orders by imposing sanctions on parties for civil contempt. Indirect contempts involving the failure to do discrete, readily ascertainable acts, such as failing to turning over a key or payment of a judgment, properly may be adjudicated through civil proceedings since the need for extensive, impartial factfinding is less pressing. This case involves indirect contempts for failing to do discrete acts – such as failing to give CDI access to the Laverty Lane Center, failing to provide a final inventory, failing to turn over Head Start vehicle keys and titles, and so on – and, accordingly, may be adjudicated through civil proceedings.

2.  There is clear and convincing evidence that: (1) there was a valid court order, (2) that Williams and Ogundare had knowledge of the order, and (3) that Williams and Ogundare disobeyed the order.

3.  An appropriate sanction is to require Williams and Ogundare to pay a modest but meaningful per diem fine until they comply with the Court's Order. Should Williams and Ogundare fail to appear at the December 29, 2005 hearing, continue to disobey the Court's Order or fail to pay the per diem fine, an appropriate sanction may be incarcerating Williams and Ogundare until they comply.

## ARGUMENT

### I. STANDARDS FOR IMPOSING SANCTIONS FOR CIVIL CONTEMPT.

It is settled law that courts have the inherent authority to enforce their orders by imposing sanctions on parties for civil contempt. See, e.g., Shillitani v. United States, 384 U.S. 364, 370 (1966) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt."). "The paradigmatic coercive, civil contempt sanction . . . involves confining a contemnor indefinitely until he complies with an affirmative command such as an order 'to pay alimony, or to surrender property ordered to be turned over to a receiver, or to make a conveyance.'" Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 829 (1994) (quoting Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 442 (1911)). "A close analogy to coercive imprisonment is a per diem fine imposed for each day a contemnor fails to comply with an affirmative court order. Like civil imprisonment, such fines exert a constant coercive pressure, and once the jural command is obeyed, the future, indefinite, daily fines are purged." Id.

There is a "somewhat elusive distinction between civil and criminal contempt fines . . . ." Id. at 830. Distinguishing between civil and criminal contempt fines is important because that determines what "procedural protections are due before any particular contempt penalty may be imposed. Because civil contempt sanctions are viewed as nonpunitive and avoidable, fewer procedural protections for such sanctions have been required." Id. at 831. Direct contempts are those that occur before the court and may be adjudicated through summary proceedings. Examples are "where a witness refuses to testify, or a party disrupts the court." Id. at 832. Indirect contempts are those that occur out of court. While "[s]ummary adjudication of indirect

7

contempts is prohibited . . . [c]ertain indirect contempts nevertheless are appropriate for imposition through civil proceedings." Id. at 833. For example, "indirect contempts involving discrete, readily ascertainable acts, such as turning over a key or payment of a judgment, properly may be adjudicated through civil proceedings since the need for extensive, impartial factfinding is less pressing." Id. This case involves indirect contempts for failing to do discrete acts – such as failing to give CDI access to the Laverty Lane Center, failing to provide a final inventory, failing to turn over Head Start vehicle keys and titles, and so on – and, accordingly, may be adjudicated through civil proceedings.

The Court must find three elements by clear and convincing evidence to hold Williams and Ogundare in civil contempt: (1) that there was a valid court order, (2) that Williams and Ogundare had knowledge of the order, and (3) that Williams and Ogundare disobeyed the order.[1] Wesley Jessen Corp. v. Bausch & Lomb, Inc., 256 F. Supp. 2d 228, 230 (D. Del. 2003) (citing Roe v. Operation Rescue, 54 F.3d 133, 137 (3d Cir. 1995)). As explained below, all three elements are satisfied by clear and convincing evidence.

## II. DEFENDANTS WILLIAMS AND OGUNDARE SHOULD BE FOUND IN CIVIL CONTEMPT OF THE COURT'S DECEMBER 7, 2005 ORDER.

### A. There Is Clear And Convincing Evidence That The Court's Order Is Valid And That Williams And Ogundare Had Notice Of The Order.

There is no question that the Court's Order is valid. Nor should there be any question

---

[1] The United States named Southern Delaware and all the members of its Board of Directors as Defendants in this case. However, because the United States has only dealt with Defendants Williams and Ogundare, and, more importantly, because there is clear and convincing evidence satisfying each of the three elements needed to hold Williams and Ogundare liable for civil contempt, the United States respectfully suggests that civil contempt sanctions be assessed only against Williams and Ogundare.

that both Williams and Ogundare had notice of the Court's Order. Should Williams and Ogundare appear at the December 29, 2005 hearing, the United States expects that they will admit that they each had notice of the Order.

Even if Williams and Ogundare were to deny that they had notice of the Order, there is clear and convincing evidence that demonstrates otherwise. Williams was handed a copy of the Order after the December 7, 2005 hearing, and, accordingly, had notice. As detailed in the Letter, Ogundare spoke to the United States Attorney's Office on several occasions regarding the Court's Order and was sent two letters, one on December 12 and one on December 16, that quoted the parts of the Court's Order that the United States contended remained unsatisfied. Accordingly, Ogundare also had notice of the Court's Order.

### B. There Is Clear And Convincing Evidence That Williams And Ogundare Have The Ability To Comply With The Court's Order, But Are Refusing To Do So.

As demonstrated in the Statement of Facts and in the Letter, there is clear and convincing evidence that Williams and Ogundare have the ability to comply with the Court's Order but are refusing to do so.

### III. AN APPROPRIATE SANCTION IS TO REQUIRE WILLIAMS AND OGUNDARE TO PAY A COERCIVE, PER DIEM FINE UNTIL THEY COMPLY WITH THE COURT'S ORDER.

When imposing a coercive, civil contempt fine on a party, the Court must consider "the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." United States v. United Mine Workers of Am., 330 U.S. 258, 304 (1947). Such fines "can be no more in amount than . . . is necessary to secure compliance and must be contingent." Id. at 372 n.37. Courts have

imposed a wide range of coercive, per diem fines for civil contempt. See, e.g., United States v. Colorado Mufflers Unlimited, Inc., No. 03-CV-1310-WDM-CBS, 2005 WL 2248862, at *1 (D. Colo. Aug. 2, 2005) (imposing coercive, per diem fine of $100 on pro se litigants); United States v. Richmond, No. 02C-1559, 2004 WL 2284286, at *1 (N.D. Ill. July 28, 2004) (imposing coercive, per diem fine of $2,500 on pro se litigants); Fed. Trade Comm'n v. Gill, 183 F. Supp. 2d 1171, 1189-91 (C.D. Cal. 2001) (imposing coercive, per diem fines of $5,000 and $1,000); Chirstian Sci. Bd. of Dirs. of the First Church of Christ v. Robinson, 123 F. Supp. 2d 965, 978 (W.D.N.C. 2000) (imposing coercive, per diem fine of $250).

The United States respectfully submits that the magnitude of harm threatened by Defendants' continued refusal to obey this Court's Order is great. Because Defendants refused to timely return Head Start property and records to CDI, many children in Sussex County have been without Head Start services since November 2, 2005. The United States respectfully requests that any per diem fine imposed on Williams and Ogundare reflect the harm they have caused those children.

However, given that any coercive fine imposed on Williams and Ogundare "can be no more in amount than . . . is necessary to secure [their] compliance," the United States respectfully requests that the per diem fine take into account the financial means of Williams and Ogundare. The United States understands that Ogundare is the manager of a Taco Bell in Seaford. It is not known how Williams is employed. Nor is the financial means of these two Defendants known. Accordingly, the United States respectfully submits that Williams and Ogundare be questioned at the December 29, 2005 hearing to determine their financial means, and that this evidence be taken into consideration when deciding how much Williams and Ogundare should be fined per

day until they comply with the Court's Order.[2]

---

[2]Should Williams and Ogundare fail to appear at the December 29, 2005 hearing, continue to refuse to comply with the Court's Order, or refuse to pay the per diem fine, an appropriate sanction might be incarcerating Williams and Ogundare until they comply. See, e.g., Richmond, 2004 WL 2284286, at *2 (ordering pro se litigant incarcerated "[b]ecause monetary sanctions alone have previously proven insufficient to bring about Black's compliance with orders of this Court"); United States v. Scott, No. 4:03-CV-1410-A, 2004 WL 1068118, at *4 (N.D. Tex. Apr. 5, 2004) (ordering pro se litigant incarcerated because litigant failed to appear at his show cause hearing).

## CONCLUSION

For all the foregoing reasons, DHHS respectfully requests that the Court find Williams and Ogundare in civil contempt of the Court's Order and impose a coercive, per diem fine on Williams and Ogundare until they comply with the Court's Order.

Respectfully Submitted,

COLM F. CONNOLLY
United States Attorney


By: /s/ Seth M. Beausang
Seth M. Beausang (I.D. No. 4071)
Assistant United States Attorney
Attorney for the United States
The Nemours Building
1007 Orange Street, Suite 700
P.O. Box 2046
Wilmington, DE 19899-2046
(302) 573-6277
seth.beausang@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, :<br><br>Plaintiff, :<br><br>v. :<br><br>SOUTHERN DELAWARE CENTER FOR CHILDREN AND FAMILIES, INC. FRANCIS A. OGUNDARE, CAROLYN WILLIAMS, REVEREND LEON WILLIAMS, WILLIAM B. DUFFY, WALLACE F. HANDY, KATHERINE H. LEWIS, DEBORAH WASHINGTON and ROSAMAE I. SMITH, :<br><br>Defendants. : | Civil Action No. 05-809-KAJ |

## CERTIFICATE OF SERVICE

I, Seth M. Beausang, hereby attest under penalty of perjury that on this 23rd day of December, 2005, I directed that a copy of the United States' Memorandum of Law in Support of a Proposed Order Imposing Sanctions on Defendants Williams and Ogundare for Civil Contempt of the Court's December 7, 2005 Order, with exhibits, be served on the following defendants in the following manner:

Personal service by HHS-OIG Agent Ed McCusker:

Carolyn D. Williams
24143 King Road
Seaford, DE 19973

Francis A. Ogundare
14245 Shiloh Church Road
Laurel, DE 19956

By overnight Fed Ex:

Reverend Leon Williams
209 N. North Street
Seaford, DE 19973

William B. Duffy
29494 Millsboro Highway
Millsboro, DE 19966

Wallace F. Handy
31732 Old Stage Road
Laurel, DE 19956

Katherine H. Lewis
6754 Seashore Highway
Bridgeville, DE 19933

Deborah Washington
10 Church Street
Bridgeville, DE 19933

Rosamae I. Smith
4574 White Deer Road
Delmar, DE 19940

                                                /s/ Seth M. Beausang
                                    Seth M. Beausang (DE I.D. No. 4071)